**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ANTONIA GARCIA,                          :

              Plaintiff,          :     CIVIL ACTION

     v.                                 :     No. 09-cv-3809

NEWTOWN TOWNSHIP, JOSEPH                 :
CZAJKOWSKI, THOMAS JIRELE, ROBERT
CIERVO, PHILLI CALABRO, MICHAEL          :
GALLAGHER, and JERRY SCHENKMAN,
                                :

              Defendants.


**MEMORANDUM and ORDER**

**JOYNER, J.**                                          **March 2, 2010**


Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Convert to Summary Judgment pursuant to Fed. R. Civ. P. 56. (Doc. No. 12.)  For the reasons set forth in the following Memorandum, we will grant the Defendants' Motion in part and deny in part.

**BACKGROUND**[1]

On August 20, 2009, Plaintiff, Antonia Garcia, filed her Complaint against Defendants Newtown Township ("the Township"), and its Township manager, Joseph Czajkowski ("Czajkowski"), and

---
[1]  In analyzing a Rule 12(b)(6) motion to dismiss, we "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).

its five Township Supervisors, Thomas Jirele ("Jirele"), Robert Ciervo ("Ciervo"), Philli Calabro ("Calabro"), Michael Gallagher ("Gallagher"), and Jerry Schenkman ("Schenkman"). Specifically, the Complaint alleges that the Plaintiff, a Hispanic female, began working for the Township on June 30, 2007 as an administrative assistant, earning $43,000.00 per annum and receiving benefits including retirement and health insurance. Plaintiff remained employed by the Township until her termination on or about September 5, 2008. When terminated, she was fifty-one years of age. Due to the nature of her employment agreement under the Township Code, Plaintiff's employment could only be terminated through a process that would include a pre-termination hearing. Plaintiff, however, did not have a pre-termination hearing. Plaintiff claims that her race was a factor in the unequal employment treatment she received from her supervisors John M. Boyle ("Boyle"), the Assistant Township Manager, and Czajkowski. For example, when Plaintiff was hired, she heard other employees saying that "Mexicans are dirty." When she reported the offending statement to the then-acting township manager, he did not investigate or take appropriate action to cease the activity. Instead, he said "they are just kidding." In February of 2008, Czajkowski told Plaintiff that she "could make a lot of trouble because she was Spanish."

The complaint goes on to allege that sometime before April 2008, Plaintiff's treatment due to her race included the

following incidents: (1) Boyle yelled and screamed at her outside in the cold; (2) Boyle forced her to stand at her desk while he sat in her chair with his hands clasped behind his head; (3) Plaintiff was told she needed to talk and socialize more like the other females in the office; and (4) Plaintiff was expected to lie about the personal activities and whereabouts of Boyle and Czajkowski during business hours, when they were neglecting work time and using Township vehicles.

In April 2008, Plaintiff reported her concerns about her treatment to Czajkowski, specifically reporting her opposition to her loss of training opportunities and the hostile work environment. After her April complaints, Boyle reduced Plaintiff's workload and removed her training opportunities. Plaintiff again reported these same concerns to Czajkowski on or about May 19, 2008. Although Czajkowski told Plaintiff that she could not report the matter to the Board of Supervisors, she also made a formal complaint of sexual harassment and employment discrimination with the Township's Board of Supervisors and the Equal Employment Opportunity Commission ("EEOC").

Plaintiff alleges that Boyle's adverse treatment interfered with her ability to work, and because of this, she missed two days of work. When she returned to work, Plaintiff was called into Czajkowski's office, where he told her in the presence of a female employee that she was "disruptive" and "should take stress management classes offered by the Township." Plaintiff then

complained to Czajkowski that Boyle was harassing her. Following this meeting, there was no investigation into Plaintiff's complaints, nor was the Township's procedure on sexual harassment followed by the Township, Czajkowski, or Boyle.

Around the second week of May 2008, Plaintiff received a negative performance evaluation from Czajkowski recommending, *inter alia*, that she obtain stress management help and learn to get along with others. Czajkowski told Plaintiff that she would have to get along with Boyle. Following this May meeting, Boyle and others would not speak to Plaintiff.

In August, Plaintiff learned that Boyle was offering training to other employees but not to her. Upon learning this, Plaintiff complained to Czajkowski that she was not offered the same training opportunities. In response, Czajkowski yelled at Plaintiff and said, "You're always looking for commies under the bed." Czajkowski did not record or investigate Plaintiff's complaint as required by the Township's sexual harassment policy.

These interactions culminated with Plaintiff's termination by Czajkowski. He told Plaintiff she was terminated because she did not get along with Boyle and other employees. Although Czajkowski explained that she could accept COBRA benefits, when Plaintiff told him that she would seek legal assistance, Czajkowski responded that "in that case [she would] not get a [sic] severance pay." Plaintiff was fired, without severance pay, unlike others similarly situated but of a different age,

4

race, or gender.

Plaintiff claims that Defendants caused her economic damages consisting of lost wages and benefits, and that she sustained personal injury, including embarrassment, humiliation, and emotional distress. Plaintiff seeks declaratory, injunctive, equitable, and affirmative relief, plus any other relief the Court deems appropriate. Her complaint alleges five counts: (I) retaliation under 42 U.S.C. § 1983 and the First Amendment; (II) due process/equal protection violations and race discrimination under 42 U.S.C. § 1983; (III) a <u>Monell</u> claim of discrimination under 42 U.S.C. § 1983; (IV) protected class and protective activity discrimination under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e) and the 1967 Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA") (mislabeled as the second Count III); and (V) retaliation under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.*("PHRA") (mislabeled as Count IV).

Defendants filed a Motion to Dismiss Counts II, III, IV, and V. Defendants also ask the Court to dismiss the following: (1) Plaintiff's request for punitive damages against the municipality and public officials acting in their official capacity; (2) any claims against the individual Township Supervisor Defendants in their official capacities because she has named the Township itself as a Defendant; (3) claims against the individual Defendants as being barred by qualified immunity; and (4) PHRA

and Title VII claims against the individual Township Supervisors because Plaintiff failed to exhaust administrative remedies as to Defendants Jirele, Ciervo, Calabro, Gallagher, and Schenkman. Defendants also ask the Court alternatively to convert the Motion to Dismiss into a Motion for Summary Judgment, and grant Summary Judgment in their favor.

### Standards for Reviewing Rule 12(b)(6) and Rule 56 Motions

In response to a pleading, under Federal Rule of Civil Procedure 12(b)(6), a defendant may assert by motion that the plaintiff's complaint "[fails] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" <u>Id.</u> at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)). In other words, the plaintiff must provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a particular cause of action. <u>Id.</u> at 234. In ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents integral to or explicitly relied upon in the complaint. <u>In re Rockefeller Sec. Lit.</u>, 184 F.3d 280, 287 (3d Cir. 1999).

Where, in a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). It follows

that a court converting a motion to dismiss into a motion for summary judgment must normally give notice to the parties of its intention to do so. Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). A district court should not enter summary judgment without a hearing unless the district court's reasoning is completely "unambiguous." Id. at 341. However, where a motion to dismiss has been framed alternatively as a motion for summary judgment, the Third Circuit Court of Appeals has concluded that the alternative filing is "sufficient to place the parties on notice that summary judgment might be entered." Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).

Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the non-moving party's evidence is insufficient to carry that burden." Id. A non-moving party, in turn, has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to

find in its favor at trial.  <u>Gleason v. Norwest Mortgage, Inc.</u>, 243 F.3d 130, 138 (3d Cir. 2001).  In conducting our analysis, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000).

## DISCUSSION

**I.    Rule 12(b)(6) Motion to Dismiss**

    **A.    Section 1983 Claims**

Pursuant to § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.  The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  <u>Wyatt v. Cole</u>, 504 U.S. 158, 161 (1992).  Section 1983 is thus not itself a source of substantive rights but rather provides a cause of action for the vindication of federal rights.  <u>Graham v. Connor</u>, 490 U.S. 286 (1989).

To make out a claim under § 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been

committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution or laws of the United States. <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980); <u>Sameric Corp. v. City of Philadelphia</u>, 142 F.3d 582, 590 (3d Cir. 1998); <u>Moore v. Tartler</u>, 986 F.2d 682, 686 (3d Cir. 1993).

**1.     Counts II and III – Section 1983 Violation of Property or Liberty Interest**

Counts II and III of Plaintiff's complaint allege violations of her property and liberty interests in her employment. For the reasons below, the Court will deny Defendants' Motion to Dismiss Plaintiff's claim of a property interest in public employment. The Court will grant Defendants' Motion to Dismiss Plaintiff's claim of a liberty interest in her public employment, but will grant Plaintiff leave to amend her complaint.

**a.     Property Interest in Public Employment**

To establish a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must prove "that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 233-34 (3d Cir. 2006) (citations omitted).

Where the deprivation of a protected interest is found, whether the procedures provided satisfy due process is determined

by analyzing the private and governmental interests at stake. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). Due process is not "a technical conception with a fixed content unrelated to time, place and circumstances," but instead is "flexible and calls for such procedural protections as the particular situation demands." Id. (quotations omitted). Thus, to determine the requisite process due in a given situation requires consideration of three distinct factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the burdens that additional or substitute procedures would impose. Id. at 334-35.

Generally, due process requires an opportunity for some kind of hearing appropriate under the circumstances prior to the deprivation of a significant property interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). However, there are also situations in which a pre-deprivation hearing is not necessary and a post-deprivation hearing will suffice. Id. at 542, n. 7; see Gilbert v. Homar, 520 U.S. 924, 930 (1997) (noting the Court has rejected the proposition that due process always requires pre-deprivation process). To have a property interest in employment, a person must have a legitimate entitlement to continued employment and not just a unilateral expectation of continued employment. Hill, 455 F.3d at 234. A legitimate

entitlement to – and thus a property interest in – a government job is not created by the Constitution but rather by state law. Id.; Loudermill, 470 U.S. at 539. In Pennsylvania, an employee is presumed to be hired at-will. Preobrazhenskaya v. Mercy Hall Infirmary, 71 Fed. Appx. 936, 940 (3d Cir. 2003). The plaintiff has the burden of overcoming the presumption of at-will employment by demonstrating that there is either (1) an express contract of employment, which includes a provision stating that the employer must have cause to terminate the employee; or (2) that there is an "implied in fact" contract of employment, meaning that additional consideration passed between the parties, allowing the court to infer that the parties intended the employment to be for a defined tenure. Id.

In the present case, Defendants argue that Plaintiff's property interest cannot be established because she cannot prove through her offer letter that she has a property interest in her employment. Plaintiff responds that she has pleaded sufficient facts to establish a property interest in her employment. Both parties agree that terms under the hiring contract help determine whether Plaintiff was employed at-will. Plaintiff's Response relies on a Third Circuit opinion determining that a doctor was not an at-will employee where his contract included an express notice provision. Carlson v. Arnot-Ogden Memorial Hospital, 918 F.2d 411, 412 (3d Cir. 1990).

Although the complaint avers that the written agreement with

11

the Township and the Township Code state that she can only be terminated for cause and following due process of law, Plaintiff has provided no evidence or documentation to support this contention. In the hiring agreement, provided by Defendants, there is no provision stating that the Plaintiff may only be terminated for cause. (Mot. to Dismiss Exhibit "A".) However, it is foreseeable that Plaintiff, through discovery, could produce the Township Code or other evidence supporting her allegations, and we shall give her that opportunity. For these reasons, Defendants' Motion to Dismiss the property interest element of Count II is denied.

### b. Liberty Interest in Public Employment

Broad in scope, the liberty interests protected through procedural due process include freedom from bodily restraint as well as

> the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

Meyer v. Nebraska, 262 U.S. 390, 399 (1923); see also Baraka v. McGreevey, 481 F.3d 187, 209 (3d Cir. 2007). Deprivation of a liberty interest can include damage to reputation, Paul v. Davis, 424 U.S. 693, 711 (1976), and "denial of continued public employment." Baraka, 481 F.3d at 209 (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972)). The

United States Supreme Court has also found that it is essential that a person should be accorded notice and an opportunity to be heard where his or her reputation is at stake. Id. Damage to reputation is not enough to establish a liberty interest in public employment. Id. There must also be a suggestion that the individual was stigmatized or disabled in some other way, foreclosing her "freedom to take advantage of other employment opportunities." Id. In addition to the stigma to her good name, a plaintiff must also show a deprivation of an additional right or interest. Dee v. Borough of Dunmore, 549 F.3d 225, 233-34 (3d Cir. 2008). This is known as the "stigma-plus" test. Id. at 234.

In the context of public employment, the false statement against a person's reputation is the "stigma," and the termination or suspension without due cause is the "plus." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006). When there is a deprivation of this nature, "the employee is entitled to a name-clearing hearing." Id. To demonstrate the "stigma" element of the test, the plaintiff must establish that the alleged stigmatizing statements were (1) made publicly and (2) false. Id.

Defendants claim that Plaintiff's liberty interest in her public employment should be denied because neither state law nor the state constitution protects a right to employment. Plaintiff, however, does not seek a right to her employment; she

requests a hearing to clear her name.  She claims that she was fired based on an allegation that she committed some bad act, which she claims she did not do.  Defendants also claim that Plaintiff has not pleaded any facts to support her claim for a liberty interest in her public employment.  Here, Plaintiff has not alleged that in connection with her termination, her employer publicly made false statements against her name. Therefore, Plaintiff's Complaint does not allege facts that would support a liberty interest in her public employment, and Defendants' Motion to Dismiss is granted, albeit with leave to Plaintiff to amend her Complaint.

### 2.    Count III — Conspiracy, Section 1983 <u>Monell</u>, and Equal Protection Claims

Count III alleges claims for conspiracy and violations of equal protection and § 1983 against the Township pursuant to <u>Monell v. N.Y.C. Department of Social Services</u>, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978).  Plaintiff has withdrawn the conspiracy claim.  For the reasons below, the Court will deny the Defendants' Motions to Dismiss the <u>Monell</u> and § 1983 claims.  The Court will grant Defendants' Motion to Dismiss Plaintiff's conspiracy claim.

### a.   <u>Monell</u> and § 1983 Claims against the Township[2]

In order to prevail on a § 1983 claim, a plaintiff must

---

[2]  Defendants treat the <u>Monell</u> and § 1983 claims separately because Plaintiff seeks relief from Defendants in their official capacity and from the Township. Plaintiff, however, claims that she only seeks relief from the Township. Because of Plaintiff's clarification, the Court is treating these claims simultaneously.

clear two hurdles.  First, she must demonstrate that she was deprived of a right secured to her by the Constitution or federal law.  Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000).  Second, she must show that the alleged deprivation was committed by a person acting through conduct sanctioned under color of state law.  Id.  Plaintiff must prove this claim by a preponderance of the evidence that the conduct committed by one acting under color of state law deprived the plaintiff of "rights, privileges, or immunities guaranteed by the Constitution."  Parratt v. Taylor, 451 U.S. 527, 535 (1981).  For the pleading stage, however, in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166-67 (1993), the Supreme Court held that notice pleading was sufficient for § 1983 suits against municipalities.

A municipality may be held liable under a § 1983 claim only when the municipality causes a constitutional tort via a policy, practice or custom.  Monell, 436 U.S. at 691-695.  In order to establish that a municipal custom exists, evidence must show that a practice, unauthorized by law, is so permanent and well-settled as to virtually constitute law.  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).  Establishing custom can happen through "proving knowledge of, and acquiescence to, a practice."  Watson v. Abington Township, 478 F.3d 144, 156 (3d Cir. 2007).  To establish a municipal policy, a plaintiff can show that the policy exists if an individual possessing final decision-making

authority regarding the action makes an official statement or policy. Id. at 155. Municipal liability under § 1983 cannot be premised on a claim of respondeat superior, meaning that municipalities cannot be sued for their employees' acts. Id. The municipality may only be held liable under § 1983 when the government's policy or custom causes the injury alleged in the complaint. City of Canton v. Harris, 489 U.S. 378, 385 (1989).

In Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), the United States Supreme Court provided further examples of how to establish policy, practice or custom. For example, municipalities may be liable under Monell through actions by a municipal legislative body, like a council. Id. Additionally, a municipality may be liable for officials' acts or edicts, which can be viewed as "official policy." Id. (quoting Monell, 432 at 694). "Official policies" are often formal rules or understandings intended to provide plans of action for specific situations, like in Monell.[3] Id. at 480-81. Municipal liability may be imposed for a single act or decision made by an authorized municipal policy-maker. Id. at 480. According to the Third Circuit, a policy-maker is an official having "final, unreviewable discretion to make a decision or take action." Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990).

---

[3] Monell involved a written policy stating that pregnant employees must take leaves of absence without pay before the leaves were medically necessary. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

Defendants assert that Plaintiff has not alleged a proper _Monell_ or § 1983 claim that Defendants, through a policy, practice or custom, violated her constitutional rights. However, in paragraph 34 of the complaint, Plaintiff alleges that there exists a policy to discriminate, retaliate, and deny equal protection of law and procedural due process. Paragraph 28 of the complaint alleges that as a part of this policy, practice, or custom, Plaintiff received adverse treatment after reporting the conduct to her supervisors. Paragraph 34 of Plaintiff's complaint claims she engaged in a protected activity - free speech, and that the Township retaliated against her pursuant to policy, practice, or custom. Additionally, paragraphs 27 and 33 of the complaint aver that because of the Township's policy, practice, or custom, she was denied a pre- or post-termination hearing process.

From these assertions, a reasonable inference can be made that there in fact exists a Township policy, practice or custom which resulted in the violation of Plaintiff's constitutional rights. Although the details of this alleged policy, custom or practice are less than clearly articulated in the complaint, we shall grant Plaintiff the opportunity to take discovery on this claim. Therefore, Defendants' Motion to Dismiss Plaintiff's _Monell_ and § 1983 claims is denied.

**B. Count IV (mislabeled as the second Count III) – Age Discrimination in Employment Act**

Count IV of Plaintiff's complaint alleges a claim of employment discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). For the reasons below, the Court will also deny Defendants' Motion to Dismiss these claims.

According to the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), sets forth the procedure through with the parties must establish and defend claims under the ADEA, and Defendants assert that Plaintiff's claim should be dismissed because she has not sufficiently met the McDonnell Douglas requirements.

McDonnell Douglas provides a burden-shifting scheme that has been applied to motions for summary judgment. See Stanziale v. Jargowsky, 200 F.3d 101 (3d Cir. 2000). However, the prima facie case requirement under McDonnell Douglas is a standard for producing and evaluating evidence, not a pleading requirement. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002). The Supreme Court clarified that it "has never indicated that the requirements for establishing a prima facie case under McDonnell

Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Id. at 511. The Third Circuit interpreted Swierkiewicz to mean that giving fair notice of the claims is sufficient; stating bare conclusions without any factual allegations is insufficient. Nix v. Welch and White, P.A., 55 Fed. Appx. 71, 72-73 (3d Cir. 2003).

Plaintiff posits that at the pleading stage, she must only meet the pleading standards to state a claim for age discrimination, and applying the McDonnell Douglas test would be premature. According to the Third Circuit, to sufficiently allege disparate treatment on the basis of age, she must allege that (1) her age played a role in the employer's decision, and (2) her age had a "determinative influence" on the result of that decision. Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004). Additionally, the plaintiff must show that "ultimately [she was] replaced by a person sufficiently younger to permit an inference of age discrimination." Id.

The complaint includes factual allegations stating a claim of age discrimination. Paragraph 69 of the complaint alleges that Plaintiff was replaced by someone Plaintiff believes to be more than ten years her junior. Paragraph 70 avers that Defendant's employees discriminated against her because of her age. This is sufficient to survive the Motion to Dismiss stage.[4]

---

[4] The Court reminds Plaintiff's counsel that in order to survive a Motion for Summary Judgment, Plaintiff must make a showing that her age was a "determinative factor" in her employer's decision.

Thus, Defendants' Motion to Dismiss Plaintiff's claim for age discrimination is denied.

### C. Count IV (mislabeled as the second Count III) – Equal Protection Claim

Count IV of Plaintiff's complaint also seeks relief under the Equal Protection Clause as a "class of one." For the reasons below, the Court will deny Defendants' Motion.

According to the "class of one" theory for a claim of an Equal Protection Clause violation, a plaintiff must allege that her employer intentionally and without rational basis treated her differently from other employees similarly situated. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 239 (3d Cir. 2006). The Third Circuit has not had many opportunities to consider the equal protection "class of one" theory, but it has determined that, at the very least, a plaintiff's claim must allege the above factors. <u>Id</u>. In <u>Hill</u>, the plaintiff's claim failed a motion to dismiss because he did not allege that similarly situated individuals were treated differently from him. The <u>Hill</u> plaintiff only mentioned other employees who were treated in a similar adverse manner. <u>Id</u>.

Defendants seek to dismiss Plaintiff's claim because she has not pointed to other individuals who were similarly situated and treated differently. Plaintiff argues that the discovery process will satisfy Defendants' concerns. Paragraph 68 of the complaint alleges that she did not get a severance package and COBRA

benefits, while similarly situated individuals who had been terminated by the Township received those benefits. Although Plaintiff has not named specific individuals and has only generally stated that other similarly situated persons received what she did not upon termination, according to Hill, naming specific individuals is not necessary to survive a motion to dismiss. Also, while she generally states that other terminated individuals received the benefits Plaintiff did not, she does not explain how the other persons were similarly situated (e.g., she does not explain what positions they held with the Township).

Without more, we cannot say that Plaintiff has sufficiently satisfied the pleading requirements for this stage. Defendants' Motion to Dismiss this claim is granted, albeit with leave to Plaintiff to amend the complaint.

### D. Qualified Immunity

The parties disagree about whether the doctrine of qualified immunity bars Plaintiff's claims against Defendants. For the reasons below, Defendants' Motion to Dismiss claims against Defendants in their official capacity is granted. Plaintiff has leave to amend her complaint.

Generally, government officials performing "discretionary functions" are immune from liability for civil damages. Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982). However, an official is not shielded from liability where his conduct violates "clearly established" constitutional or statutory rights of which a

21

"reasonable person" would have known.  <u>Id.</u> at 818.  When the law is clearly established, "the immunity defense ordinarily should fail, since a reasonably competent official should know the law governing his conduct."  <u>Id.</u> at 818-19.  Furthermore, the boundaries of qualified immunity are defined objectively and consequently provide "no license to lawless conduct."  <u>Id.</u> at 819.  Therefore, a public official will not receive qualified immunity where he "knew or reasonably should have known that the action he took . . . would violate the constitutional rights of the [plaintiff]."  <u>Id.</u> at 815.  Qualified immunity questions should be resolved as early as possible in litigation in order to resolve any insubstantial claims against government officials prior to discovery.  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009).

In <u>Pearson</u>, the Supreme Court adjusted the <u>Saucier</u> two-step analysis to resolve questions of qualified immunity.  <u>Id.</u> at 815 (citing <u>Saucier v. Katz</u>, 533 U.S. 194 (2001)).  The <u>Saucier</u> test requires that the first step must be satisfied in order to proceed to the second.  129 S. Ct. at 815-16.  First, the court must determine whether the facts alleged by the plaintiff set forth a constitutional right.  <u>Id</u>.  If this step is satisfied, then the court must determine if the right at issue in the plaintiff's claim was "clearly established" at the time of the alleged misconduct, and a reasonable official would have known that he was breaching a constitutional right.  <u>Id</u>. at 816.

However, the <u>Pearson</u> Court concluded that <u>Saucier</u>'s two-step analysis, although beneficial, "should not be regarded as mandatory in all cases" due to the test's potential to result in less clarity where the analysis relies heavily on facts. 129 S. Ct. at 818-19 (2009). In other words, <u>Saucier</u>'s two-step analysis is no longer a mandated process; courts have the discretion to determine which step to analyze in a given case. <u>Id</u>. at 815-19.

In <u>Thomas v. Independence Township</u>, 463 F.3d 285 (3d Cir. 2006), the Third Circuit found that abstract statements of constitutional violations were insufficient to undertake a qualified immunity analysis. <u>Id.</u> at 300.[5] Broad statements of law do not guide a court in analyzing whether a constitutional right is clearly established. <u>Id.</u> Abstract allegations of qualified immunity place the doctrine in danger of being easily converted '"into a rule of virtually unqualified liability . . . by alleging violation of extremely abstract rights.'" <u>Id.</u> (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987)). Furthermore, the guarantee of official immunity was not intended to become a pleading rule. 463 F.3d at 300.

Defendants argue that under the second step of the <u>Saucier</u> analysis, the allegations in the complaint are too broad and do

---

[5] In <u>Thomas v. Independence Township</u>, 463 F.3d 285 (3d Cir. 2006), the plaintiffs asserted that "it [was] clearly established that it is unlawful to harass and intimidate a person based upon his or her race; to conduct searches and seizures of a person without a warrant or probable cause; and to use excessive force against a person in an effort to harass and intimidate." <u>Id.</u> at 300.

not state how Defendants, through their personal involvement, violated Plaintiff's constitutional rights.  Plaintiff counters that the allegations in paragraph 8 of the complaint are sufficient to plead a claim of individual involvement in the allegations.  Paragraph 8 alleges that

> All Defendants, for the times relevant to the Plaintiff's causes of action, were vested with authority under color of state law to hire, suspend and/or terminate an employee, such employees [sic] as the Plaintiff, [sic] however, none of he [sic] Defendants were vested, and knew they were not vested, with authority TO [sic] use such power in violation of federal or state rights or law; such as to terminate employment of an employee because the employee, such as the Plaintiff, had engaged in activities protected by the United States Constitution and/or the Pennsylvania Constitution, or the laws or regulations of the United States or Commonwealth of Pennsylvania.

We find that this pleading is precisely the type of abstract statement disallowed in <u>Thomas</u>.  We cannot undertake an analysis of what Defendants reasonably knew or should have known when the alleged misconduct took place.  Therefore, Defendants' Motion to Dismiss Plaintiff's claims against Defendants in their official capacity is granted.  However, Plaintiff has leave to amend her Complaint with a more definite statement.  If Plaintiff fails to sufficiently allege what Defendants reasonably knew or should have known at the time of the alleged misconduct, she will not be given another opportunity to re-plead this or any other portion of her complaint.

**E. Motion to Dismiss Counts IV (mislabeled as the second Count III) and V (mislabeled as Count IV) for Failure to Exhaust Administrative Remedies under the Pennsylvania Human Relations Act and Title VII of the Civil Rights Act of 1964**

Defendants additionally ask this Court to dismiss the individual Township Supervisors from Plaintiff's Pennsylvania Human Relations Act and Title VII of the Civil Rights Act of 1964 claims on the grounds that Plaintiff has failed to exhaust her administrative remedies as to the individual defendants. As explained below, Defendants' Motion to Dismiss the Township Supervisors from Plaintiff's PHRA and Title VII claims is granted.

Because Title VII is understood to be the federal counterpart to the PHRA, courts interpret them the same. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Prior to bringing a claim for judicial relief under Title VII or the PHRA, a plaintiff must exhaust all administrative remedies. Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). She must first file a complaint of discrimination with the relevant state or federal agency before filing a suit under Title VII or the PHRA. Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). To satisfy her exhaustion requirements for Title VII and/or the PHRA, a plaintiff must ordinarily name all parties as "respondent" when filing her complaint with the administrative agency. Schafer v. Board of Public Education of School District of Pittsburgh, 903

F.2d 243, 252 (3d Cir. 1990); 42 U.S.C. § 2000e-5(f)(1).  This is to facilitate a more informal conciliation process before allowing the matter to proceed to litigation.  <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996).  The Third Circuit Court of Appeals has recognized an exception to the rule "when the unnamed party received notice and when there is a shared commonality of interest with the named party."  903 F.2d at 252; <u>see</u> <u>Glus v. G.C. Murphy Co.</u>, 629 F.2d 248, 251 (3d Cir. 1980).[6]

District courts in this circuit have applied the exception in various circumstances to allow suits to move forward.  <u>Urey v. East Hempfield Township</u>, 2009 WL 561664 *3 (E.D. Pa. 2009).  Suits have moved forward due to sufficient reference to the unnamed defendant in the body of the charge of discrimination, which sufficiently put the unnamed party on notice.  <u>Id.</u> (citations omitted).  Courts have dismissed claims where the individual defendants were not named as respondents and where the body of the charge did not contain allegations against the defendants.  <u>Id.</u> (citations omitted).

A plaintiff can forgo the exhaustion requirement by demonstrating through a "clear and positive showing" that it

---

[6] <u>Glus</u> provides four guiding factors for determining whether the exception to the exhaustion requirements applies.  <u>Glus v. G.C. Murphy Co.</u>, 628 F.2d 248, 251 (3d Cir. 1980).  The factors are: (1) whether through reasonable effort the complainant could determine the role of the unnamed party when filing the EEOC complaint; (2) whether the interests of the named and unnamed parties are so similar that for the goal of voluntary conciliation and compliance, including the unnamed party in the earlier proceedings would be unnecessary; (3) whether the unnamed party's interests were prejudiced through its absence from the EEOC proceedings; and (4) whether the complainant had reason to believe that the unnamed party represented that its relationship with the complainant is through the named party.  <u>Id</u>.

would be futile to pursue the claim.  <u>Gambino v. Arnouk</u>, 232 Fed. Appx. 140, 147.  She must demonstrate certainty of futility, not mere doubts that an appeal will bring forth a different result. <u>Id.</u> (citations omitted).

Defendants argue that Plaintiff named only Newtown Township on the EEOC charge as a respondent, and therefore the individual Defendants could not have received notice of the claims against them at the administrative stage.  Plaintiff asserts that it would have been futile to exhaust remedies by listing the defendants individually on the discrimination charge and requests time for factual discovery on the matter.  Upon looking at the discrimination charge, included in Defendants' Motion as Exhibit "B", there is no mention of individual Defendants Jirele, Ciervo, Calabro, Gallagher, and Schenkman as respondents.  Additionally, the body of the charge does not mention these parties individually, nor does it mention the conduct of the members of the Board of Supervisors.  Therefore, Defendants Jirele, Ciervo, Calabro, Gallagher, and Schenkman were not sufficiently put on notice as required to exhaust remedies.  Furthermore, Plaintiff did mention other Defendants individually, Boyle and Czajkowski, which demonstrates that she could have also mentioned the Township Supervisors individually.  As to Plaintiff's futility argument, it does not make sense.  Plaintiff asks for time to demonstrate that it would have been futile to pursue a claim against the individual Defendants, when Plaintiff is in fact,

pursuing claims against the individual Defendants.

Plaintiff has failed to exhaust remedies as to individual Defendants Jirele, Ciervo, Calabro, Gallagher, and Schenkman as to the PHRA and Title VII claims. Therefore, Defendants' Motion to Dismiss for failure to exhaust remedies with respect to those Defendants is granted.

## II.    Rule 56 Motion for Summary Judgment

The Court denies Defendants' Motion for Summary Judgment at this stage.

**CONCLUSION**

For all of the foregoing reasons, the Court will grant the Defendants' Motion to Dismiss the Count II liberty interest claims and Count III liberty interest and conspiracy claims. In addition, the Court will dismiss the Plaintiff's claims against the individual defendants in their official capacities and claims against individual Defendants Jirele, Ciervo, Calabro, Gallagher and Schenkman under the PHRA and Title VII. Furthermore, the Court dismisses Plaintiff's request for punitive damages as there are no allegations in the complaint which could arguably support such a claim. In all respects[7], the Motion is denied.

An order follows.

---

[7] Plaintiff agrees to dismiss her conspiracy claim, request for punitive damages against the Township Supervisors acting in their official capacity when the Township is a named Defendant, because the claims against the Township Supervisors are the same as the claims against the Township itself.