# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIA GARCIA | : CIVIL ACTION |
| | : |
| vs. | : |
| | : NO. 09-CV-3809 |
| NEWTOWN TOWNSHIP, | : |
| JOSEPH CZAJKOWSKI, | : |
| THOMAS JIRELE, PHILIP CALABRO, | : |
| MICHAEL GALLAGHER and | : |
| JERRY SCHENKMAN | : |

## MEMORANDUM AND ORDER

JOYNER, C.J.                                          June 9, 2011

This civil action is again before this Court on Motion of the Defendants for the entry of Summary Judgment in their favor pursuant to Fed. R. Civ. P. 56 (Doc. No. 52). For the reasons discussed below, the motion shall be granted nearly in full.

### Statement of Relevant Facts

On June 30, 2007, Plaintiff, Antonia Garcia, was hired by then-Acting Township Manager John Boyle for the position of Administrative Assistant to the Newtown Township Manager in Bucks County, Pennsylvania. The position was full-time and Plaintiff was paid $43,000 per annum plus retirement and other benefits, including health insurance coverage. At the time of her hire, Plaintiff was fifty years of age. Plaintiff's employment was subsequently terminated on September 5, 2008 by Defendant Joseph Czajkowski, who had been hired as Township Manager in December of

the preceding year.[1]  Plaintiff contends that she was unlawfully

discriminated against in the terms and conditions of her

employment and unlawfully terminated from her position on the

basis of her sex, age and race and in retaliation for exercising

her First Amendment right to freedom of speech.  Plaintiff thus

brought suit under 42 U.S.C. §1983, Title VII, 42 U.S.C. §2000e,

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§624, *et. seq.,* and the Pennsylvania Human Relations Act,

("PHRA"), 43 P.S. §951, *et. seq.* against the Township of Newtown

and the individual members of its Board of Supervisors

(Defendants Jirele, Ciervo, Calabro, Gallagher and Schenkman) and

Joseph Czajkowski.[2]  Discovery in this matter has now been

completed and Defendants' seek the entry of judgment in their

favor as a matter of law on all of the remaining claims against

them pursuant to Fed. R. Civ. P. 56.

### Standards for Ruling on Summary Judgment Motions

Under Fed. R. Civ. P. 56(a),

> A party may move for summary judgment, identifying each
> claim or defense - or the part of each claim or defense

---

[1]  Upon Mr. Czajkowskyi's hiring, Mr. Boyle resumed his previous position of Assistant Township Manager.

[2]  Originally, Plaintiff's complaint also contained claims for deprivation of her liberty interest and her rights to equal protection of the law, conspiracy and punitive damages.  On March 2, 2010, this Court partially granted the defendants' motion to dismiss and thus the claims which remain are as follows: First Amendment Retaliation under §1983 (Count I), Violation of Right to Due Process for deprivation of property interest under §1983 (Count II), §1983 <u>Monell</u> claim against Newtown Township (Count III), Title VII and ADEA claim against Defendant Czajkowski and Newtown Township(Count IV) and PHRA claim against Defendant Czajkowski and Newtown Township (Count V).

- on which summary judgment is sought.  The court shall
grant summary judgment if the movant shows that there
is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law.  The
court should state on the record the reasons for
granting or denying the motion.

At the summary judgment stage, a court views the facts in the
light most favorable to the non-moving party and the "judge's
function is not to weigh the evidence and determine the truth of
the matter but to determine whether there is a genuine issue for
trial."  Mollo v. Passaic Valley Sewerage Commissioners, 2011
U.S. App. LEXIS 1101 at *7 (3d Cir. Jan. 20, 2011)(quoting
Pearson v. Component Technology Corp., 247 F.3d 471, 482 (3d Cir.
2001)).  An issue is genuine only if there is a sufficient
evidentiary basis on which a reasonable jury could find for the
non-moving party, and a factual dispute is material only if it
might affect the outcome of the suit under governing law.
Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006),
citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.
Ct. 2505, 91 L. Ed.2d 202 (1986).  If the non-moving party bears
the burden of persuasion at trial, "the moving party may meet its
burden on summary judgment by showing that the nonmoving party's
evidence is insufficient to carry that burden."  Id., quoting
Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).  "The
mere existence of some evidence in support of the nonmovant is
insufficient to deny a motion for summary judgment; enough
evidence must exist to enable a jury to reasonably find for the

nonmovant on the issue." Renchenski v. Williams, 622 F.3d 315, 324 (3d Cir. 2010)(quoting Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).

## Discussion

*A. First Amendment Retaliation*

In Count One of her complaint, Plaintiff seeks monetary damages for the defendants' purported retaliation against her for exercising her First Amendment right to free speech. Specifically, Ms. Garcia asserts that prior to her termination in September, 2008, she had "spoken out on matters of public concern about the Defendant Township, such as sex discrimination by Township supervisor (sic) personnel and supervisors engaging in personal matters on taxpayer time (while being paid)." (Pl.'s Complaint, ¶14).

Although it had previously been the general rule that a public employee had no right to object to conditions placed upon the terms of his or her employment, including those which restricted the exercise of constitutional rights, the Supreme Court has since made clear that public employees do not surrender all of their First Amendment rights by reason of their employment. Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 1957, 164 L. Ed.2d 689 (2006) (citing, *inter alia*, Pickering v. Board of Education of Township High School Dist. 205, Will Cty., 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed.2d 811 (1968),

Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed.2d 708

(1983) and Rankin v. McPherson, 483 U.S. 378, 384, 107 S. Ct.

2891, 97 L. Ed.2d 315 (1987)).[3]  Indeed, the Court has recognized

the right of employees to speak on matters of public concern[4],

typically matters concerning government policies that are of

interest to the public at large, a subject on which public

employees are uniquely qualified to comment.  City of San Diego,

California v. Roe, 543 U.S. 77, 80, 125 S. Ct. 521, 523-524, 160

L. Ed. 2d 410 (2004).  Outside of this category, the Court has

---

[3] Specifically, the First Amendment provides in relevant part: "Congress shall make no law ... abridging the freedom of speech ..."

Of course, in filing the instant lawsuit against the Township and its five-member governing Board of Supervisors, Plaintiff has invoked §1983, which provides as follows in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ...

This statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005)(quoting Baker v. McCollan, 443 U.S. 137, 145, n.3, 99 S. Ct. 2689, 61 L. Ed.2d 433 (1979)).  To establish liability under §1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained-of injury.  Id. (citing Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998)).

[4] Speech deals with a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Snyder v. Phelps, ___U.S. ___, 131 S. Ct. 1207, 1215-1216, 179 L. Ed. 2d 172 (2011) (quoting San Diego, supra, 543 U.S. at 83-84 and Connick, supra, 461 U.S. at 146).  The arguably "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern."  Id. (quoting Rankin, supra. at 387).

held that when government employees speak or write on their own time on topics unrelated to their employment, the speech can have First Amendment protection, absent some governmental justification "far stronger than mere speculation" in regulating it.  Id. (quoting United States v. Treasury Employees, 513 U.S. 454, 465, 475, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995).

It is noteworthy that the protections granted by the First Amendment are not absolute.  "'From 1791 to the present,' the First Amendment has 'permitted restrictions upon the content of speech in a few limited areas,' and has never 'included a freedom to disregard these traditional limitations,'" among which are speech which is obscene, fraudulent, defamatory, incites violence and/or is integral to criminal conduct.  United States v. Stevens, ___ U.S. ___, 130 S. Ct. 1577, 1584, 176 L. Ed.2d 435, 443-444 (2010)(quoting, inter alia, United States v. Playboy Entertainment Group, 529 U.S. 803, 817, 120 S. Ct. 1878, 146 L. Ed. 2d 865 (2000); R.A.V. v. St. Paul, 505 U.S. 377, 382-383, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992); Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 771, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976); Brandenberg v. Ohio, 395 U.S. 444, 447-449, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969);  Roth v. United States, 354 U.S. 476, 483, 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957); Beauharnais v. Illinois, 343 U.S. 250, 254-255, 72 S. Ct. 725, 96 L. Ed. 919 (1952)); Policastro v. Tenafly Board of

Education, 710 F. Supp. 2d 495, 503-504 (D. N.J. 2010).

"To reconcile the employee's right to engage in speech and the government employer's right to protect its own legitimate interests in performing its mission, the [Supreme] Court [in Pickering, supra.] adopted a balancing test," which requires a court evaluating restraints on a public employee's speech to balance 'the interests of the employee as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" San Diego, 543 U.S. 82, 125 S. Ct. at 524-525 (quoting Pickering, 391 U.S. at 568); Rankin, 483 U.S. at 384, 107 S. Ct. at 2896-2897; and Connick, 461 U.S. at 140, 103 S. Ct. at 1686).  See Also, Beckinger v. Township of Elizabeth, 697 F. Supp. 2d 610, 622 (W.D. Pa. 2010)("Where implicated, the interest of the employee in speaking as a citizen on a matter of public concern must be weighed against the employer's interest in promoting the efficiency of the public services it performs through its employees").

The threshold question in applying the Pickering balancing test is whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern."  Rankin, 483 U.S. at 384, 107 S. Ct. at 2897 (quoting Connick, 461 U.S. at 146, 103 S. Ct. at 1689).  "Whether an employee's speech addresses a matter of public concern must be

determined by the content, form, and context of a given statement as revealed by the whole record." Id. (quoting Connick, 461 U.S. at 147-148, 103 S. Ct. at 1690)); Beyer v. Duncannon Borough, 2011 U.S. App. LEXIS 7793 at *11 (3d Cir. 2011). "As in other First Amendment cases, the court is obligated 'to make an independent examination of the whole record' in order to make sure that the 'judgment does not constitute a forbidden intrusion on the field of free expression.'" Snyder, 131 S. Ct. at 1216 (quoting Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984) and New York Times Co. v. Sullivan, 376 U.S. 254, 284-286, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964)). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." Id.

Once done, the court must then ascertain whether it may read the complaint as alleging that the employee was speaking as a "citizen." Beyer, at *9. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 126 S. Ct. at 1960. "[T]he 'proper inquiry' into what are an individual's official duties 'is a practical one'" such that "'[f]ormal job descriptions often bear

8

little resemblance to the duties an employee actually is expected to perform.'" <u>Gorum v. Sessoms</u>, 561 F.3d 179, 185 (3d Cir. 2009)(quoting <u>Garcetti</u>, 547 U.S. at 424). Instead, "a claimant's speech might be considered part of his official duties if it relates to 'special knowledge' or 'experience' acquired through his job." <u>Id</u>. (citing <u>Foraker v. Chaffinch</u>, 501 F.3d 231, 240 (3d Cir. 2007)).

To summarize, in order to state a First Amendment retaliation claim, a public employee plaintiff must show (1) that his activity is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action. <u>Knight v. Drye</u>, 375 Fed. Appx. 280, 2010 U.S. App. LEXIS 7746 (3d Cir. April 14, 2010); <u>Gorum</u>, 561 F.3d at 184; <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241 (3d Cir. 2006). The first factor is a question of law; the second factor is a question of fact. <u>Hill</u>, <u>supra</u>. (citing <u>Curinga v. City of Clairton</u>, 357 F.3d 305, 310 (3d Cir. 2004)). If these two elements are satisfied, the burden shifts to the defendants to demonstrate that the same action would occur if the speech had not occurred. <u>Gorum</u>, at 184; <u>Hill v. City of Scranton</u>, 411 F.3d 118, 125 (3d Cir. 2005). "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement concerned a matter of public concern, and (3) the government employer did not have an 'adequate

justification for treating the employee differently from any other member of the general public' as a result of the statement he made.'" Hill v. Kutztown, 455 F.3d at 241-242 (quoting Garcetti, 126 S. Ct. at 1958)). The content the speech may also help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993)(quoting Connick, 461 U.S. at 148)). Thus, "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." Swineford v. Snyder County, PA, 15 F.3d 1258, 1271 (3d Cir. 1994). In accord, Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001).

Applying these precepts to the case at hand, it appears from the record that Plaintiff is basing her First Amendment retaliation claim on: (1) her refusal to continue to accompany Assistant Township Manager John Boyle and one of her co-workers, Pat Davidson, when they went out for drinks after work and/or to lunch because she was opposed to their having an affair when and while they were married to other people; (2) her observations that Mr. Czajkowski and Mr. Boyle were "never ... at work;" and (3) Mr. Czajkowski's failure to address her complaint that she was being discriminated and retaliated against and harassed by

Mr. Boyle and Ms. Davidson.  (Pl.'s Deposition, pp. 90-93, 104-139).

There is no evidence on this record, however, that Ms. Garcia ever spoke to anyone about the relationship between Mr. Boyle and Ms. Davidson except for informing Ms. Davidson that she "didn't feel right about" accompanying them for drinks or meals and that she therefore "wasn't going to do it anymore." (Pl's Dep., pp. 107-110; Dep. of J. Czajkowski, pp. 83).  While it does appear that Mr. Boyle violated the Township's "no fraternization" policy by engaging in an inappropriate relationship with Ms. Davidson, we cannot find that Plaintiff's declaration of personal discomfort to Ms. Davidson constituted First Amendment-protected speech.  Summary judgment shall therefore be granted insofar as this aspect of Count One is concerned.

We reach the same conclusion with respect to Ms. Garcia's complaint about the way she was being treated in the workplace by Mr. Boyle and Ms. Davidson after she advised Ms. Davidson that she no longer wished to join them for drinks and lunch outside of the office.  Indeed, Ms. Garcia did not speak publicly about the evils of discrimination and/or harassment in general; rather she complained privately about wrongdoing that she herself had suffered.  (Pl's Dep., pp. 117-135; Dep. of Jerry Schenkman, pp. 13-20).  "This conversation, while protected under Title VII, has little or no 'instrumental value to the community in enabling

11

self-governance,' and thus does not appear to have addressed a matter of sufficient public concern to warrant First Amendment protection."  Zelinski v. Pennsylvania State Police, 108 Fed. Appx. 700, 708, 2004 U.S. App. LEXIS 16576, *21 (3d Cir. Aug. 11, 2004)(quoting Azzaro v. County of Allegheny, 110 F.3d 968, 977 (3d Cir. 1997)).  Hence, summary judgment shall be granted on this point as well.

We reach a different conclusion with regard to the matter of Plaintiff's remark about the work ethics of Messrs. Czajkowski and Boyle.  The evidence of record on this point, while scant, does reflect that in addition to informing several of the individual members of the Township Board of Supervisors and managers from other Townships that Mr. Czajkowski and Mr. Boyle "were never there," Ms. Garcia also  discussed this with two friends who lived in Newtown.  (Pl's Dep., pp. 134-142, 227-228; Schenkman Dep., p. 19).  Certainly, it is conceivable that the general public would have concerns as to whether its township officials are in fact performing the work which they are paid to do.  We therefore find that plaintiff's speech on this matter is entitled to First Amendment protection.  Moreover,  given Plaintiff's testimony that Mr. Czajkowski issued her a written employment evaluation cautioning her to "keep everything internal" and "confidential" just one week after Plaintiff raised her concerns with Township Supervisor Schenkman, a genuine issue

of material fact exists as to whether Plaintiff's termination some 3 months later was retaliatory or whether it would have occurred anyway because of Plaintiff's purportedly poor job performance. See, e.g., Marra v. Philadelphia Housing Authority, 497 F.3d 286, 302 (3d Cir. 2007)(holding that "[i]n certain narrow circumstances, 'unusually suggestive' proximity in time between protected activity and the adverse action may be sufficient on its own, to establish the requisite causal connection.")(internal citations omitted).  We thus shall grant the defendants' motion for summary judgment on Count One of the Complaint in all respects save with regard to this one statement.

B.  *Count Two - Violation of Due Process/Property Interest*

As noted, Plaintiff's sole remaining claim in Count Two of the complaint is that Defendants' termination of her employment effectively deprived her of property without due process of law. There being no evidence to support this claim, summary judgment on Count Two shall likewise now be entered in its entirety.

The Fourteenth Amendment to the United States Constitution forbids "any state" to "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV, §1.  "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest is encompassed within the Fourteenth Amendment's protection of life, liberty, or property.'" Elmore, 399 F.3d at 282 (quoting Alvin v.

_Suzuki_, 227 F.3d 107, 116 (3d Cir. 2000)). The Third Circuit has explained that "a plaintiff ... who seeks to establish a procedural due process claim must demonstrate that '(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property,' and (2) that the procedures available to him did not provide 'due process of law.'" _Biliski v. Red Clay Consolidated School District Board of Education_, 574 F.3d 214, 219 (3d Cir. 2009)(quoting _Hill v. Kutztown_, 455 F.3d at 234)).

"To have a property interest in a job, a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." _Id_. (citing _Board of Regents v. Roth_, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972)). "As a result, an at-will employee has 'no property interest in his or her job sufficient to trigger due process concerns.'" _Id_. (quoting _Elmore_, _supra_., and _Bishop v. Wood_, 426 U.S. 341, 346  n.8, 96 S. Ct. 2074, 48 L. Ed.2d 684 (1976)).

Since state law creates the property rights protected by the Fourteenth Amendment, we look to the law of Pennsylvania to determine whether Ms. Garcia has a legitimate property interest in her job with Newtown Township.  _Hill v. Kutztown_, 455 F.3d at 234; _Kelly v. Borough of Sayreville_, 107 F.3d 1073, 1077 (3d Cir. 1997).  Pennsylvania has long adhered to the doctrine of

"employment at-will." See, e.g., Weaver v. Harpster, 601 Pa.
488, 492 n.3, 975 A.2d 555, 557 n.3 (2009); Geary v. United
States Steel Corp., 456 Pa. 171, 176, 319 A.2d 174, 175 (1974).
In essence, the at-will employment doctrine provides that, absent
a statutory or contractual provision to the contrary, the
employer and employee each have the power to terminate the
employment relationship for any or no reason. Id. Exceptions to
this general rule have been recognized in only very limited
circumstances such as where discharge of an at-will employee
would threaten clear mandates of public policy. Id., citing
Geary, 319 A.2d at 180; Knox v. Board of School Directors of
Susquenita School District, 585 Pa. 171, 183, 888 A.2d 640, 647-
648 (2005). And, "this general rule is not abrogated just
because the employee is a governmental worker since one does not
have a *per se* right in governmental employment." Knox, id,
(quoting Pipkin v. Pennsylvania State Police, 548 Pa. 1, 693 A.
2d 190, 191 (1997)).[5]

Further, "[i]n Pennsylvania, only two types of contracts
give rise to a legitimate expectation of continued employment."
Walters v. Washington County, 2011 U.S. App. LEXIS 3903 at *6 (3d
Cir. March 1, 2011). "'The first is a contract that confers a
protected status, such as a tenure contract providing for

---

[5] Under Section 7H(1)(h) of the Newtown Township Administrative Code
(Employee Relations Manual), "[t]he Township Manager may dismiss any employee.
Dismissal is the maximum administrative discipline." (Plaintiff's Summary
Judgment Exhibit "3").

permanent employment.  The second is a contract explicitly
providing that it may be terminated only for cause.'" Id.
(quoting Sanguingi v. Pittsburgh Board of Public Education, 968
F.2d 393, 401 (3d Cir. 1992)).  In other words, a clear and
definite intention to overcome the presumption of at-will
employment must be expressed in the contract.  Rutherfoord v.
Presbyterian University Hospital, 417 Pa. Super. 316, 323, 612
A.2d 500, 503 (1992)(citing Scott v. Extracorporeal, Inc., 376
Pa. Super. 90, 545 A.2d 334 (1988) and Veno v. Meredith, 357 Pa.
Super. 85, 515 A.2d 571 (1986)).

    In this case, it appears that Plaintiff relies upon the
offer letter which she received from then-Acting Township Manager
Boyle dated June 30, 2007 as support for the instant due process
claim.  Specifically, this letter outlined the terms and
conditions for Plaintiff's employment including her salary,
benefits and paid time off, her work days and hours and stated
that she was "expected to read and understand Part 7 of the
Newtown Township Administrative Code of 2000, titled the
'Employee Relations Manual,'" otherwise known as the township's
personnel policy.  The offer letter says only that Plaintiff's
position is classified as "an exempt, salaried position under the
terms of the Fair Labor Standards Act," that "[t]here will be a
six-month probationary period and a performance review at that
time...," after which the plaintiff would be "subject to

performance reviews annually and will be considered for wage adjustments as of January 1st each year."  A copy of the personnel policy was enclosed with this letter and the letter concluded with:

> "[i]f the terms and conditions as outlined above are consistent with your understanding of the position being offered, I request that you sign the acknowledgment and return this letter to my office.  A copy has been provided for your records."

It further appears that Ms. Garcia signed, dated and returned the acknowledgment as requested.  (Plaintiff's Summary Judgment Exhibit "1"; Defendant's Exhibit "E" to Motion for Summary Judgment).  Nowhere in the letter, however, is there **any** mention of the duration of Plaintiff's employment, nor is there any indication that her employment was permanent or that it could be terminated only for cause.  And, Part 7E, Section 9 of the enclosed Township Personnel Policy clearly states as follows:

<u>Employment at Will</u>

> It is the policy of the Township that all employees who do not have a written employment agreement or do not work under a labor agreement or contract, are employed at the will of the Township for an indefinite period.  Employees may resign from the Township after proper notice and may be terminated by the Township at any time, for any reason, with or without notice.  No Township representative is authorized to modify this policy for any employee or to enter any agreement contrary to this policy.  Completion of a probationary period or conferral of regular full time status shall not change an employee's status as an employee-at-will or in any way restrict the Township's right to terminate such an employee.  Nothing contained in this manual, employee handbooks, employment applications, Township memoranda, employment letters or other materials provided to employees in connection with their employment shall restrict the

> Township's right to terminate an employee at any time or for
> any reason.  These documents shall not create an express or
> implied contract of employment for a definite period.
> (Exhibit "F" to Defendant's Motion for Summary Judgment).

Thus we conclude that, notwithstanding her arguments to the

contrary, Ms. Garcia did *not* have an employment contract and she

in fact was an employee at-will under Pennsylvania law.  As such,

Plaintiff did not have a property interest in her employment

entitling her to due process protection.[6]  She therefore does not

have a valid claim for violation of her rights under the

Fourteenth Amendment and Newtown Township is entitled to judgment

in its favor as a matter of law on Count Two of the Complaint in

its entirety.

> C.  *Plaintiff's Discrimination Claims: Counts Four and Five*
>     *(Mislabeled as second Count Three and Four)*

In Counts Four and Five, Ms. Garcia claims that the

defendants  discriminated and retaliated against her in the terms

and conditions of her employment and terminated her because of

her age, sex, race and/or national origin in violation of Title

---

[6]  The Township Personnel Policy does contain a Grievance Procedure for
its employees who think that they have not been treated fairly at Section 6c.
Paragraph 9 of §6c reads:

> Employees not subject to labor agreements may request a hearing of the
> Board of Supervisors as described in this Administrative Code, in the
> event of a suspension in excess of 10 working days and dismissal.  Board
> of Supervisors decisions in such maters (sic) are final.

Although Ms. Garcia clearly requested a hearing before the full Board of
Supervisors in writing and orally, the Township never granted her one.
(Plaintiff's Summary Judgment Exhibits 4, 5 and 6).  Inasmuch as we do not
read the Township Administrative Code as requiring the Board to grant a
hearing if requested and because the plaintiff does not possess a property
right in her employment, we do not find that the refusal to grant the
plaintiff a hearing gives rise to a due process violation in any event.

VII, 42 U.S.C. §2000e, *et. seq.,* the Age Discrimination in
Employment Act, ("ADEA"), 29 U.S.C. §621, *et. seq.* and the
Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. §951, et.
seq.[7]

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e,
*et. seq., as amended*, prohibits employers from failing or
refusing to hire or discharging any individual or otherwise
discriminating against an individual employee "with respect to
his compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or
national origin."  42 U.S.C. §2000e-2(a)(1).  The language of the
ADEA, 29 U.S.C. §623(a) similarly renders it unlawful for an
employer:

> (1)  to fail or refuse to hire or to discharge any
> individual or otherwise discriminate against any individual
> with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any
> way which would deprive or tend to deprive any individual of
> employment opportunities or otherwise adversely affect his
> status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to
> comply with this Act.

The Pennsylvania Human Relations Act, 43 P.S. §955(a)
likewise declares that it is an

---

[7]  This Court having granted that part of Defendants' Motion to Dismiss
Counts Four and Five against the individual members of the Newtown Township
Board of Supervisors, only Plaintiff's claims against the Township itself and
Manager Joseph Czajkowski remain.

"unlawful discriminatory practice, unless based upon a bona
fide occupational qualification, or in the case of a
fraternal corporation or association, unless based upon
membership in such association or corporation, or except
where based upon applicable security regulations established
by the United States or the Commonwealth of Pennsylvania:
for any employer ... to refuse to hire or employ or contract
with, or to bar or to discharge from employment such
individual or independent contractor, or to otherwise
discriminate against such individual or independent
contractor with respect to compensation, hire, tenure,
terms, conditions or privileges of employment or contract,
if the individual or independent contractor is the best able
and most competent to perform the services required,"
"because of ... race, color, religious creed, ancestry, age,
sex, national origin or non-job related handicap or
disability or the use of a guide or support animal..."

By virtue of the foregoing language, it appears clear that
these statutes prohibit both intentional discrimination (known as
"disparate treatment") as well as, in some cases, practices that
are not intended to discriminate but in fact have a
disproportionately adverse effect on minorities (known as
"disparate impact").[8] See, e.g, Ricci v. Destefano, ___ U.S. ___,
129 S. Ct. 2658, 2672, 147 L. Ed.2d 490 (2009)(interpreting Title
VII); Smith v. City of Jackson, Miss., 544 U.S. 228, 125 S. Ct.
1536, 161 L. Ed.2d 410 (2005)(holding that ADEA authorizes
disparate impact claims).

It has been said that disparate treatment cases present "the

---

[8] Stated otherwise, disparate impact claims "involve employment
practices that are facially neutral in their treatment of different groups but
that in fact fall more harshly on one group than another and cannot be
justified by business necessity.  Proof of discriminatory motive... is not
required under a disparate impact theory."  Hazen Paper Co., infra., 507 U.S.
at 609, 113 S. Ct at 1705-1706 (quoting Teamsters v. United States, 431 U.S.
324, 335-336, n. 15, 97 S. Ct. 1843,155, n. 15, 52 L. Ed.2d 396 (1977).

most easily understood type of discrimination," and occur where an employer[9] has "treated a particular person less favorably than others because of" a protected trait.  Id. (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985-986, 108 S. Ct. 2777, 101 L. Ed.2d 827 (1988) and Teamsters v. United States, 431 U.S. 324, 335, n.15, 97 S. Ct. 2843, 52 L. Ed.2d 396 (1977)).  When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait actually motivated the employer's decision," and "had a determinative influence on the outcome." Kentucky Retirement Systems v. E.E.O.C., 554 U.S. 135, 128 S. Ct. 2361, 2366, 171 L. Ed.2d 322 (2008); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000)(both quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 123 L. Ed.2d 338 (1993)).

It is axiomatic that a plaintiff can sustain an employment

_____

[9]  "Employer" is defined under Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person..." 42 U.S.C. §2000e(b).  Under the PHRA, "[t]he term 'employer' includes the Commonwealth or any political subdivision or board, department, commission or school district thereof and any person employing four or more persons within the Commonwealth..."  43 P.S. §954(b).  Individual employees may not be held liable under Title VII, See generally, Kachmar v. SunGard Data Systems, 109 F.3d 173, 184 (3d Cir. 1997); Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1077-1078 (3d Cir. 1996); nor under the PHRA, except that an individual employee may be subject to liability under the PHRA if he or she aids or abets an unlawful discriminatory act.  Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996); Elskamp v. Penn-Delco School District, 2011 U.S. Dist. LEXIS 53275 at *11n.4 (E.D. Pa. May 18, 2011).  In light of this, we are required to enter summary judgment in favor of Mr. Czajkowski on Plaintiff's claims under Title VII.  Insofar as it appears that Ms. Garcia asserts that Mr. Czajkowski "aided and abetted" Mr. Boyle's acts of discrimination by failing to address and/or take appropriate action to investigate and/or address them, we decline to grant summary judgment in his favor with respect to the PHRA claims on this basis.

discrimination claim through a presentation of either direct evidence of discrimination or indirect evidence. <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed.2d 268 (1989); <u>Fasold v. Justice</u>, 409 F.3d 178, 184 (3d Cir. 2005). In the absence of direct evidence of discrimination, Title VII and ADEA discrimination claims must be analyzed according to the burden-shifting framework set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973). <u>Reeves</u>, 530 U.S. at 142, 120 S. Ct. at 2105; <u>Sarullo v. U.S. Postal Service</u>, 352 F.3d 789, 797 (3d Cir. 2003). <u>See Also</u>, <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (clarifying <u>McDonnell Douglas</u> standard); <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 121, 105 S. Ct. 613, 621-22, 83 L. Ed.2d 523 (1985)("<u>McDonnell Douglas</u> test is inapplicable where the plaintiff presents direct evidence of discrimination"); <u>Texas Dep't. of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)(also clarifying <u>McDonnell Douglas</u> standard). The same analysis applies to discrimination cases brought under the PHRA. <u>Wilson v. Mobilex USA, Inc.</u>, 2011 U.S. App. LEXIS 1807, *4 (3d Cir. Jan. 28, 2011); <u>Kelly v.  Drexel University</u>, 94 F.3d 102, 105 (3d Cir. 1996). <u>See also</u>, <u>Fogelman v. Mercy Hospital</u>, 283 F.3d 561, 567 (3d Cir. 2002)("[W]e have held that the PHRA is to be interpreted as identical to federal

anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.")

Under <u>McDonnell Douglas</u>, a plaintiff first must provide adequate evidence of a prima facie case of discrimination, showing that: (1) he is a member of a protected class; (2) he is qualified for the position in question; (3) he suffered an adverse employment action; and (4) his employer sought to fill the position with a similarly qualified individual who was not a member of the plaintiff's protected class. <u>Andes v. New Jersey City University</u>, 2011 U.S. App. LEXIS 6145 at * 4-*5 (3d Cir. March 24, 2011)(citing <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S. Ct. at 1824). Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate, non-discriminatory reason for the adverse employment action. <u>Smith v. Allentown</u>, 589 F.3d 684, 690 (3d Cir. 2009)(citing <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997)). This burden is "relatively light, and the employer need only "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." <u>Tomasso v. Boeing Co.</u>, 445 F.3d 702, 706 (3d Cir. 2006)(quoting <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). "If the employer does so, the burden of production returns to the plaintiff to

demonstrate that the employer's proffered rationale was a pretext for age discrimination. Smith, supra, (citing Starceski v. Westinghouse Electric Corp., 54 F.3d 1089, 1095, n.4 (3d Cir. 1995). In this regard, "the employee need not always offer evidence sufficient to discredit all of the rationales advanced by the employer." Tomasso, 445 F.3d at 707. Indeed,"[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." Id,(quoting Fuentes, 32 F.3d at 764 n.7). At all times, however, the burden of persuasion rests with the plaintiff. Smith, at 690; Fasold, 409 F.3d at 184.

At the outset, we note that there is no direct evidence of discrimination on the record before us. As a result, we must apply the McDonnell Douglas paradigm and in so doing, we find that the record adequately supports the establishment of a prima facie case of discrimination. First, Plaintiff is a female whose father hailed from Spain.[10] She was over fifty years of age at the time her employment was terminated. Second, Plaintiff was arguably qualified for the position of Administrative Assistant, in that she has a Bachelor's Degree in Journalism from Temple

---

[10]    Inasmuch as Spain is located in Southwestern Europe and Plaintiff's mother was of English/Irish/Scotch-Welsh descent, Plaintiff's minority status is dubious given that she is Caucasian and the racial origins of the other Newtown Township employees and most particularly her immediate supervisors are Caucasian European. For purposes of our analysis on this point, however, we give Plaintiff the benefit of the doubt.

University and a paralegal certificate from Bucks County Community College and she held the job for approximately 1½ years before suffering the adverse employment action at issue, *to wit*, termination.  Finally, the record demonstrates that the woman whom the Township later hired to replace Plaintiff in the position is in her early thirties.

Accordingly, the burden of proof shifts to Newtown Township to show that Plaintiff was terminated for a valid, non-discriminatory reason.  To that end, both Mr. Czajkowski and Mr. Boyle testified that Ms. Garcia was terminated from her employment because she was careless and made spelling and formatting mistakes in her preparation of meeting agendas, failed to pay attention to detail in her work, failed to make her boss' priorities her priorities and had difficulty understanding her co-workers' personalities and working with her co-workers. (Boyle Dep., pp 45-51; Czajkowski Dep.,41-42, 47-49).  Elaine Gibbs, the Township Finance Director testified that she had heard a number of complaints from several other women who worked in the Township office with Plaintiff that Plaintiff was asking them questions about how to do her job. (Gibbs Dep., pp. 9-17).  This testimony is sufficient to rebut the *prima facie* case and thus the burden returns to Plaintiff to demonstrate that this explanation is a pretext for discrimination.

After very carefully scrutinizing the record here, we

cannot find that Plaintiff has adduced sufficient evidence of pretext to satisfy her burden.  Again,

> "a plaintiff who has made out a *prima facie* case may defeat a motion for summary judgment by *either* (i)discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994). (internal citation omitted)  In other words, if the aggrieved employee can raise evidence sufficient 'to discredit the employer's proffered reasons... the employee need not also come forward with additional evidence of discrimination beyond his ... *prima facie* case in order to survive summary judgment.'"

<u>Fasold v. Justice</u>, 409 F.3d at 185 (quoting <u>Fuentes</u>, 32 F.3d at 764, and citing <u>Reeves</u>, 530 U.S. at 148, 120 S. Ct. 2097 and <u>Sheridan</u>, 100 F.3d at 1067).  Indeed, there are multiple e-mails between March and August, 2008 which evince growing dissatisfaction with Plaintiff's work product, attitude and ability to work with her co-workers.  (Exhibits "U" - "Z" to Newtown Township's Motion for Summary Judgment).  In addition, in a Memorandum dated May 19, 2008 confirming a discussion that took place that same day, Mr. Czajkowski outlined in writing his expectations for the plaintiff in her position and noted that he would have a follow-up meeting with Plaintiff in 90 days. (Exhibit "AA" to Newtown Township's Motion for Summary Judgment).

Although there is evidence that Mr. Boyle violated the Township's "no fraternization" policy by having an extra-marital affair with Pat Davidson and that several other Township

employees violated the Township's computer use policies but were not disciplined, there is no evidence that either Mr. Czajkowski or the Township Board of Supervisors had any knowledge of these transgressions until after this lawsuit was commenced. We therefore cannot find that Ms. Garcia was intentionally treated differently from similarly situated Township employees nor can we find that this evidence is sufficient to cause a reasonable factfinder to discredit the Township's articulated reasons for Plaintiff's termination.

We also cannot find that adequate evidence exists that discrimination was more likely than not the true reason behind the plaintiff's firing. On this point, we note that the **only** evidence on the record is the testimony of the plaintiff herself that: (1) Mr. Czajkowski once asked her about her last name, wanting to know whether it was her married name and then remarked that she could cause a lot of trouble with that name; and (2) she was told by one Charles Patton, a retired Newtown Township police officer who was also suing the Township, that Mr. Czajkowski had once called her a "cunt." (Garcia Dep., pp. 196-198, 210-213). Inasmuch as there is nothing to suggest that these are anything other than two isolated incidents, unrelated to one another or to the plaintiff's working conditions, they do not satisfy Plaintiff's burden of showing that her termination was more likely than not the result of racial, sexual or age-based animus.

Likewise, though less than clear, it appears that Plaintiff may also be endeavoring to claim that she was unlawfully sexually and/or racially harassed and/or that her working conditions were illegally hostile and/or abusive.  While it is clear that a violation of Title VII can be established through proof that discrimination based on sex has created a hostile or abusive work environment, "not all work place conduct that may be described as 'harassment' affects a 'term, condition, or privilege of employment' within the meaning of Title VII."  Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78, 118 S. Ct. 998, 140 L. Ed.2d 201 (1998)(quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed.2d 295 (1993)); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S. Ct. 2399, 91 L. Ed.2d 49 (1986).  Five factors are to be assessed in considering a claim of employment discrimination based upon a hostile or abusive work environment: (1) the plaintiff suffered intentional discrimination because of her gender; (2) the discrimination was pervasive or severe; (3) the discrimination adversely affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability.  Hartley v. Pocono Mountain Regional Police Department, 2007 U.S. Dist. LEXIS 20254 at *4 (M.D. Pa. March 22, 2007)(citing Shahin v. College Misericordia,

28

2006 U.S. Dist. LEXIS 65272 (M.D. Pa. Sept. 13, 2006). A
totality of the circumstances test determines whether the
threshold level of severity and pervasiveness has been reached
with such factors as the severity of the harassment, the
frequency of the harassment and the degree of abuse being the key
factors which the court should consider. <u>Zelinski v.
Pennsylvania State Police</u>, 108 Fed. Appx. 700, 704, 2004 U.S.
App. LEXIS 16576 at *9 (3d Cir. Aug. 11, 2004)(citing <u>Harris</u>, 510
U.S. at 23). "When the workplace is permeated with
discriminatory intimidation, ridicule, and insult that is
sufficiently severe or pervasive to alter the conditions of the
victim's employment and create an abusive working environment,
Title VII is violated." <u>Id</u>. (quoting <u>Oncale</u> and <u>Harris</u>, both
<u>supra</u>.).

In applying these principles to the matter at hand and
viewing the evidence in the light most favorable to Plaintiff, we
cannot find that the environment in which Plaintiff worked was
"permeated with discriminatory intimidation, ridicule and insult"
such as would alter the conditions of her employment. Here
again, the only evidence of abuse comes from the testimony of the
plaintiff that John Boyle forced her to stand at her desk while
he sat in her chair with his hands clasped at the back of his
head, had her accompany him outside the building and had her
stand in the cold while he pointed his finger at her and yelled

at her, took work and a training class away from her, and told
her that she had to socialize more with people in the office.
Plaintiff also stated that Joseph Czajkowski yelled at her,
refused to investigate her claims of abuse and harassment at the
hands of Mr. Boyle and Ms. Davidson, told her that she didn't fit
in with the other employees in the office and didn't "gel" with
him and told her that she was always seeing "commies under the
bed."  While we do not disagree that some of these incidents may
have been quite unpleasant for Plaintiff, we do not find them
close to equating with the requisite ridicule, intimidation or
insult nor do we find them sufficiently severe to alter the terms
and conditions of her employment.  Thus, to the extent that
Plaintiff is attempting to seek relief under Title VII and the
PHRA by way of a harassment theory, that attempt also fails.  For
all the foregoing reasons, judgment shall be entered in favor of
the defendants and against Plaintiff as a matter of law on Counts
Four and Five (mislabeled as second Count Three and Count Four)
of the Complaint.

*D.  Count Three - Monell/§1983 Claims*

Although poorly drafted and difficult to understand, it
appears that in Count Three of her Complaint, the plaintiff may
be attempting to hold the Township Defendant liable under <u>Monell</u>
<u>v. Department of Social Services of City of New York</u>, 436 U.S.
658, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978) and for the alleged

violation of her constitutional rights to equal protection and
due process of law.[11]   Since we have already determined that the
plaintiff did not possess a property interest in her employment
entitling her to due process protection and since the Supreme
Court has concluded "that the class-of-one theory of equal

---

[11] Indeed, we simply cannot understand what Plaintiff means by:

35.  At all times relevant to these causes of action the Defendants
acted unreasonably, without probable cause, consent of the Plaintiff,
privilege or right of law, in bad faith, outrageously, with free speech
and/or petition clause activity by the Plaintiff as the primary,
substantial or motivating basis for the actions, and/or under the
policy, customs, and practices of Newtown Township.

Incredibly, it also appears as though several of the paragraphs contained
in Count Three belong to an altogether different lawsuit as the following
excerpts illustrate:

34.  Defendants (sic) action are (sic) alleged to be done under a policy
(sic) practice and/or custom of Newtown Township and/or its officials,
and such policy, practice or custom is intended to discriminate against
officers in their employment and retaliate against employees for
engaging in lawful and/or protected activities, such as but limited to
free speech and petition clause activities, and further the policy
practice and custom is intended to or is so overly broad as to
impermissible (sic) deprive or chill the exercise of free speech and/or
petition clause activities.

...

38.  The Defendants (sic) acts, actions, and conduct were over-reaching
conduct, which conduct was intended and designed to be such and to
accomplish an illegal purpose, which was to deprive rights, or chill
them, and to treat Plaintiff unequally in the terms and conditions of
his employment than others who are similarly situated, such as but not
limited to reporting police misconduct, suing for wrongful termination,
an (sic) appearing in court and providing testimony.

Nowhere else in the complaint and nowhere in the record is there any indicia
that the plaintiff was ever either a police officer or a man who reported
police misconduct.  Accordingly, this Court is at a loss to fathom how these
averments have any relevance to the instant matter.  It is also noteworthy
that Plaintiff's counsel's briefs and other written submissions are replete
with typographical errors and other incomprehensible sentences.  Given that
the Pennsylvania Bar requires all practicing attorneys in the Commonwealth to
obtain 12 hours of CLE credits annually, we would strongly recommend that
Plaintiff's counsel henceforth spend most, if not all, of his CLE time in
courses focusing on legal writing.

31

protection has no application in the public employment context[12],

summary judgment shall be entered in favor of the Township on

those issues as a matter of law.  We thus now consider whether

sufficient evidence exists to sustain a §1983 cause of action for

violation of Plaintiff's First Amendment constitutional right to

speak about the work habits of the Manager and Assistant Manager

of Newtown Township without fear of reprisal under Monell.

Simply stated, the Monell decision stands for the following

principle:

> [A] local government may not be sued under §1983 for an
> injury inflicted solely by its employees or agents.
> Instead, it is when execution of a government's policy or

---

[12]  Specifically, "[t]he Equal Protection Clause of the Fourteenth
Amendment commands that no State shall 'deny to any person within its
jurisdiction the equal protection of the laws,' which is essentially a
direction that all persons similarly situated should be treated alike." City
of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct.
3249, 3254, 87 L. Ed.2d 313 (1985).  This clause does not, however, "prevent
the states from making reasonable classifications among such persons." Doe v.
Pennsylvania Board of Probation & Parole, 513 F.3d 95, 112 (3d Cir.
2008)(quoting W & S Life Insurance Co. v. State Board of Equalization, 451
U.S. 648, 656-657, 101 S. Ct. 2070, 68 L. Ed.2d 514 (1981).  "If a distinction
between persons does not implicate a suspect or quasi-suspect class, state
action will be upheld if it is rationally related to a legitimate state
interest." Amiriantz v. New Jersey, 2007 U.S. App. LEXIS 25020, 251 Fed.
Appx. 787, 789 (3d Cir. Oct. 25, 2007).  And, "[a]n equal protection claim can
in some circumstances be sustained even if the plaintiff has not alleged
class-based discrimination but instead claims that she has been irrationally
singled out as a so-called "class of one." Enquist v. Oregon Department of
Agriculture, 553 U.S. 591, 601, 128 S. Ct. 2146, 2153, 170 L. Ed.2d 975
(2008)(quoting Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073,
145 L. Ed.2d 1060 (2000).  To proceed on such a claim, a plaintiff must allege
that he or she has been "intentionally treated differently from others
similarly situated and that there is no rational basis for the difference in
treatment." Zahl v. New Jersey Department of Law & Public Safety, 2011 U.S.
App. LEXIS 10103, at *10 (3d Cir. May 18, 2011)(quoting Enquist, supra.);
Renchenski v. Williams, 622 F.3d 315, 337-338 (3d Cir. 2010).  This "class-of-
one theory of equal protection," however, "has no application in the public
employment context." Enquist, 128 S. Ct. at 2156; Conard v. Pennsylvania
State Police, 360 Fed. Appx. 337, 339, 2010 U.S. App. LEXIS 532 (3d Cir. Jan.
11, 2010).  Accordingly, we must grant summary judgment in favor of
defendants on the equal protection theory as well.

custom[13], whether made by its lawmakers or by those whose
edicts or acts may fairly be said to represent official
policy, inflicts the injury that the government as an entity
is responsible under §1983.

<u>Monell</u>, 436 U.S. at 694, 98 S. Ct. at 2037-2038.  Municipalities

thus cannot be held liable under a theory of *respondeat superior*

and it is not enough for a §1983 plaintiff merely to identify

conduct properly attributable to the municipality.  <u>Board of</u>

<u>County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 403,

404, 117 S. Ct. 1382, 1388, 137 L. Ed.2d 626 (1997).  Rather,

[t]he plaintiff must also demonstrate that, through its
*deliberate* conduct, the municipality was the 'moving force'
behind the injury alleged.  That is, a plaintiff must show
that the municipal action was taken with the requisite
degree of culpability and must demonstrate a direct causal
link between the municipal action and the deprivation of
federal rights.

<u>Id</u>.

"The first inquiry in any case alleging municipal liability

under §1983 is the question whether there is a direct causal link

between a municipal policy or custom and the alleged

constitutional deprivation."  <u>City of Canton, Ohio v. Harris</u>, 489

U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed.2d 412 (1989).

It is not enough for a §1983 plaintiff to merely identify conduct

properly attributable to the municipality; the plaintiff must

---

[13] "'Policy' includes official proclamations made by a municipal
decisionmaker with final authority, and "custom" is defined as 'practices of
state officials ... so permanent and well settled as to virtually constitute
law.'" <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248, 263 (3d Cir. 2010)(quoting
<u>Berg v. County of Allegheny</u>, 219 F.3d 261, 275 (3d Cir. 2000)).

also demonstrate, that through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. Bryan County, 520 U.S. at 404, 117 S. Ct. at 1388. This "deliberate indifference" standard is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Id., at 410, 117 S. Ct. at 1391. "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1360, 179 L. Ed.2d 417 (2011)(citing Bryan County, 520 U.S. at 407). Indeed, '[t]he city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" Id.(quoting Canton, 489 U.S. at 395, 109 S. Ct. 1197, 103 L. Ed.2d 412).

Finally, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. ... Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the

consequences of their action – the 'deliberate indifference' – necessary to trigger municipal liability." Id. (quoting Bryan County, 520 U.S. at 407, 409, 117 S. Ct. at 1390).

In this case, there is no evidence whatsoever that Newtown Township or any of its policymaking employees promulgated, permitted or were deliberately indifferent to a custom, practice or policy on the part of its officials or employees which authorized, sanctioned or condoned retaliatory actions or terminations for speech concerning a matter of public concern by anyone.  Summary judgment is therefore also properly entered in favor of the defendants as a matter of law as to Count Three in its entirety.

### E.  Qualified Immunity

The various members of the Township Board of Supervisors also assert that they are protected from suit by the doctrine of qualified immunity.

The purpose of qualified immunity is to shield "government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697, 143 L. Ed.2d 818 (1999)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982).  In the March 2, 2010 Memorandum and Order

issued by this Court, however, we dismissed all of the claims against the Supervisors in their official capacities (albeit with leave to re-plead) and there are no allegations in the remaining portion of the complaint which could be read as giving rise to a viable cause of action against the Supervisors as individuals in their own right.  We observe that Plaintiff did not make any efforts to amend or to re-plead the official capacity claims against any of the Township Supervisors and it is for these reasons that we shall also now enter judgment in favor of Messrs. Jirele, Ciervo, Calabro, Gallagher and Schenkman in this matter.

In conclusion then, Defendants' Motion for Summary Judgment is granted in all respects with the exception of Plaintiff's claim against Defendant Czajkowski for retaliatory dismissal in violation of her First Amendment right to speak on the matter of the amount of time Messrs. Czajkowski and Boyle spent working for the Township and/or the said individuals' use of Township work time.  An order follows.